## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTINA ALLEN,

               Plaintiff,

        v.

EQUIFAX INFORMATION
SERVICES, LLC, and EXPERIAN
INFORMATION SOLUTIONS, INC.,

               Defendants.

No. 24-cv-12288

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Christina Allen alleges that Defendant Experian Information Solutions, Inc. ("Experian") violated the Fair Credit Reporting Act ("FCRA") when it failed to report that several of Plaintiff's accounts in bankruptcy had not been discharged. (Dkt. 17.) Through a motion to dismiss, Defendant argues that the FCRA imposes no obligation on Defendant to examine bankruptcy records to determine whether a debt has in fact been discharged in bankruptcy. For the reasons that follow, the Court agrees with Defendant's position. Accordingly, the motion to dismiss is granted, and the case is dismissed with prejudice.

## I. BACKGROUND

Plaintiff filed a Chapter 13 bankruptcy petition in October 2020 in which she scheduled 26 claims.[1] While Plaintiff's bankruptcy proceeding was ongoing, Plaintiff opened at least four accounts with different creditors: First Premier on June 20, 2022 ("First Premier Account"); Mission Lane Bank on July 2, 2022 ("Mission Account"); Fingerhut/Webbank on April 12, 2022 ("Fingerhut Account"); and Kikoff Lending on March 28, 2023 ("Kikoff Account") (collectively, "the Accounts"). (Dkt. 17 ¶¶ 54–57.) Because they were incurred post-petition, these accounts were not listed on Plaintiff's Chapter 13 bankruptcy schedules from her initial petition before conversion. (*Id.* ¶¶ 47–59.)

On November 15, 2023, over three years after Plaintiff's initial filing, Plaintiff converted her Chapter 13 proceeding to a Chapter 7 proceeding because she failed to make plan payments under the Chapter 13 proceeding.[2] (Dkt. 17 ¶ 50.) Plaintiff amended her bankruptcy schedules to add new debts, for a total of 52 scheduled debts. (Dkt. 23 at 4.) These amended schedules included debts with First Premier and Fingerhut but did not include the account numbers or dates the debts were incurred.

---

[1] A debt is scheduled when the debtor lists it on one of the several bankruptcy schedules. 11 U.S.C. § 521(a)(1). Because such schedules are essential for bankruptcy courts to adjudicate the case, errors or intentional omissions can lead to the denial of debt relief. 11 U.S.C. § 523(a)(3).

[2] In a motion to dismiss the bankruptcy case (of which the Court takes judicial notice), the bankruptcy trustee argued that dismissal was appropriate because Plaintiff failed to make plan payments. (Dkt. 20 at 5) (citing *In re Christina Allen*, 1:20-bk-19277 (Bankr. N.D. Ill. Oct. 27, 2020)); *see also Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed).

(Dkt. 19-2 at 22.)[3] Plaintiff did not schedule the Kikoff and Mission Accounts. (*See generally* Dkt. 19-2.)

On February 13, 2024, the bankruptcy court issued an order of discharge for Plaintiff but noted that "[s]ome debts are not discharged," such as "debts which the debtors did not properly list" and "debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case." (Dkt. 19-3 at 1–2[4]; Dkt. 17 ¶¶ 51, 68.) Indeed, the order provided only a "general summary," advised Plaintiff that "the law is complicated," and recommended that Plaintiff "consult an attorney to determine the exact effect of the discharge in this case." (Dkt. 19-3 at 2.)

Plaintiff later checked her credit report and learned that Experian had listed the Mission, First Premier, and Fingerhut Accounts as "Collection/Chargeoff" and the Kikoff Account as late. (Dkt. 17 ¶¶ 54–57.) Plaintiff admits that she did not contact Experian to dispute this information before filing this case. (Dkt. 23 at 5.)

Plaintiff then brought this suit in which she alleges that Experian's failure to report these four accounts as discharged, despite reporting other accounts as discharged, constitutes a violation of the Fair Credit Reporting Act ("FCRA"). According to Plaintiff, Defendant violated its duty under the FCRA to follow "reasonable procedures to assure maximum possible accuracy" of the information it reports. *See* (Dkt. 17 ¶¶ 66, 72, 74); 15 U.S.C. § 1681e(b).

---

[3] The Court takes judicial notice of Plaintiff's amended schedule from her cited bankruptcy proceedings. (Dkt. 17 ¶ 47); *see also Opoka*, 94 F.3d at 394.

[4] The Court also takes judicial notice of the general discharge order from Plaintiff's cited bankruptcy proceedings. (Dkt. 17 ¶¶ 47, 51.)

## II.     STANDARD OF REVIEW

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Such "details and proof" come later, and all a plaintiff must do is "state a grievance." *Id.* at 1338. In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

## III.     DISCUSSION

### A.     Legal Standards Under the Fair Credit Reporting Act ("FCRA")

A purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of*

*Am. v. Burr*, 551 U.S. 47, 52 (2007). FCRA allows credit reporting agencies ("CRAs") to report consumer bankruptcy information. 15 U.S.C. § 1681c(a)(1). Failure to report bankruptcy information accurately may result in liability. *Safeco*, 551 U.S. at 52.

But "FCRA is not a strict liability statute," and CRAs insulate themselves from liability so long as they maintain "reasonable procedures to assure maximum possible accuracy" when preparing credit reports. *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004); 15 U.S.C. § 1681e(b). Separately, consumers may trigger a duty to "reinvestigate" when they dispute the accuracy of credit data. 15 U.S.C. § 1681i(a). But liability under this duty to reinvestigate does not arise if the Plaintiff filed suit before disputing the accuracy of credit data. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285–87 (7th Cir. 1994) (affirming dismissal of claims under Section 1681e(b), but remanding claims under Section 1681i).

As the Seventh Circuit has cautioned, liability under Section 1681e(b) arises more rarely than under Section 1681i(a) when bankruptcy information is in dispute. *Id.* This is because Section 1681e(b) targets only objectively verifiable inaccuracies, not arguable legal disputes as to whether a debt was discharged. *See Denan v. Trans Union LLC*, 959 F.3d 290, 296–97 (7th Cir. 2020) (FCRA does not require CRAs to determine the "legal validity" of debts); *see also Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568–69 (7th Cir. 2021) (distinguishing factual mismatches from legal disputes, and explaining that CRAs need not adjudicate legal questions).

Section 1681e(b) does not force a CRA to decide whether a debt has been discharged: requiring CRAs to investigate the underlying bankruptcy proceedings

would be "unduly burdensome and inefficient" and "[t]he consumer is in a better position than the [CRAs] to detect errors appearing in court documents." *Henson*, 29 F.3d at 285–87. When a CRA is confronted with a general order of discharge, therefore, Section 1681e(b) does not require the CRA to wade through bankruptcy dockets to determine if any particular debt was discharged. *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1109 (8th Cir. 2022) (citing *Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015)) (signaling agreement with "our sister circuits" that CRAs need not "hire individuals with legal training to preemptively determine the validity of reported debts").

Instead, a CRA may rely on the face of court documents or furnisher-provided information to avoid liability under Section 1681e(b)—so long as it is accurately reported. *Id.* ("Absent notice that the [general] discharge specifically included the [] account," the CRA was permitted to rely on the information furnished to it by the creditor).

## B. Plaintiff Has Failed to State a Claim Against Experian Under Section 1681e(b)

Plaintiff premises her theory on Section 1681e(b) and argues in essence that Defendant was negligent when it produced a credit report failing to reflect that the Mission, First Premier, Fingerhut, and Kikoff Accounts (collectively, the "Accounts") were discharged. (Dkt. 17 ¶ 61.) Plaintiff argues that Defendant improperly interpreted the general discharge order to exclude the four accounts at issue; more specifically, Plaintiff states that Plaintiff's conversion of her bankruptcy case from a Chapter 13 proceeding to a Chapter 7 proceeding swept in the Accounts opened after

the Chapter 13 filing but before the conversion. (*Id.* ¶¶ 73–75.) From that, Plaintiff concludes Experian was required to code the Accounts with a zero balance. (*Id.*)

As Defendant notes, Plaintiff's argument is contrary to applicable precedent: Section 1681e(b) targets objectively verifiable inaccuracies but does not force CRAs to determine the legal status of a debt. *See Denan*, 959 F.3d at 296–97 (CRAs need not determine the "legal validity" of debts); *see also Chuluunbat*, 4 F.4th at 568–69 (distinguishing factual mismatches from legal disputes, and explaining that CRAs need not adjudicate legal questions).

A review of the pleadings reflects that Plaintiff's claims turn on the interpretation of legal issues regarding the Accounts' bankruptcy statuses, not alleged factual errors. All four accounts were opened during the Chapter 13 case and before the November 15, 2023 conversion. (Dkt. 17 ¶¶ 53–59.) But the amended Chapter 7 schedules omit two of those creditors entirely and list two without account numbers or dates. (Dkt. 19-2 at 22.) Moreover, the discharge order is on a standard form that names no creditors and warns that some debts, including "debts which the debtors did not properly list," are not discharged. (Dkt. 19-3 at 2.) Determining whether these particular obligations were actually discharged requires applying bankruptcy law. And as *Denan* says, the FCRA does not conscript CRAs to make such legal determinations. 959 F.3d at 296–97. *Chuluunbat* says the same, but in different words. 4 F.4th at 568–69.

Defendant did all that it was required to do: report the information that was provided to it by furnishers. (Dkt. 17 ¶ 71.) Defendant was under no obligation to dig

7

through court records and legally analyze whether the Mission, First Premier, Fingerhut, and Kikoff Accounts in particular were actually discharged under bankruptcy law. *Henson*, 29 F.3d at 285–87. If Plaintiff had a different understanding of what debts were discharged, she could have flagged this with Defendant, which would have triggered Defendant's duty to investigate and given rise to potential liability under 15 U.S.C. § 1681i(a). Plaintiff failed to do so, and instead brought suit under Section 1681e(b) with allegations courts have squarely rejected.

Had Plaintiff pleaded a true factual mismatch, rather than a legal misinterpretation, her claim might be on firmer ground. *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 807–09 (7th Cir. 2023) (allowing claims where reporting contradicted objective sources, and emphasizing "objectively verifiable" inaccuracy). For example, if the docket, trustee report, claims register, or furnisher update unambiguously identified the same creditor and the same account as discharged with a zero balance and Defendant still reported a balance, there would then exist a clear factual mismatch that could be actionable.

Plaintiff's complaint does not allege that kind of source-by-source contradiction for each of the alleged accounts. On the contrary, the complaint refers to an amended schedule that offers no account numbers at all for First Premier or Fingerhut. (Dkt. 19-2 at 22.) Moreover, the schedule does not list Mission or Kikoff. *See generally* (*id.*) Defendant therefore could not have identified any factual contradiction from the face of the bankruptcy schedule even if it wanted to. Any argument to the contrary would require an impermissible presumption that Defendant was aware of the discharge

status (of Plaintiff's debts of which two were entirely unscheduled and the remaining two were missing account numbers). *See Denan*, 959 F.3d at 296–97 (CRAs need not determine the "legal validity" of debts).

Under applicable precedent, therefore, Plaintiff's claims must fail. That leaves whether this dismissal should be with or without prejudice. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible."); *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend . . . where the amendment would be futile." ); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (rejecting plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend).

Pleading standards suggest that dismissal with prejudice is warranted here. Plaintiff's amended complaint asserts legal conclusions that will not be cured by more facts. *McCauley v. City of Chicago*, 671 F.3d 611, 618–19 (7th Cir. 2011). And Plaintiff does not request leave to file an amended complaint. *James Cape*, 453 F.3d at 400–01 (affirming dismissal with prejudice where plaintiff did not request leave to amend). Even if she did, allowing further amendment would be futile: Plaintiff's amended complaint fails to address the same arguments Defendant made in its original motion to dismiss and with which this Court now agrees. (Dkt. 11.) Because

9

Plaintiff's case cannot be validated by alleging more facts, dismissal with prejudice is warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff's claims are dismissed with prejudice.

SO ORDERED in No. 24-cv-12288.

Date: February 24, 2026

JOHN F. KNESS
United States District Judge